UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


KIMBERLY KAISER,                           Case No. 1:13-CV-0010-EJL-CWD

                        Plaintiff,          **MEMORANDUM DECISION
                                            AND ORDER**
        v.

TRACE, INC.,

                        Defendant.

---

## INTRODUCTION

Pending before the Court in the above-titled matter is Defendant's Motion for

Summary Judgment.   (Dkt. 30.)   Plaintiffs have responded to the Motion, and Defendants

have replied.   The matter is now ripe for the Court's review.   Having fully reviewed the

record, the Court finds that the facts and legal arguments are adequately presented in the

briefs and record. Accordingly, in the interest of avoiding further delay, and because the

Court conclusively finds that the decisional process would not be significantly aided by

oral argument, this matter shall be decided on the record before this Court without oral

argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Kimberly Kaiser ("Ms. Kaiser") began working for Defendant TRACE, Inc. ("TRACE") in 2006. (Dkt. 31-9, p. 1.) Ms. Kaiser worked for TRACE without incident until July 2011, when she was put on leave because of her pregnancy. (*Id.*) The facts, set forth in a light most favorable to the plaintiff, are taken from the record.

As day stocker and warehouse employee, Ms. Kaiser's job description required the ability to lift 75 pounds. (Dkt. 30-6, Kimberly Kaiser Deposition, hereinafter "Kaiser Dep.", pp. 62:17-63:13.) Upon learning she was pregnant in June 2011, Ms. Kaiser requested an assignment to a lighter aisle. (Dkt. 31-1, p. 2.) It is unclear whether Ms. Kaiser's supervisor, Jeremy Toulouse ("Mr. Toulouse"), knew of her pregnancy at the time of the initial request. (*Id.*) The request was never granted, and on July 12, 2011 Ms. Kaiser injured her ankle at work. (*Id.*) Ms. Kaiser sought treatment for her ankle and obtained a restriction against lifting over 35 pounds because of her pregnancy. (*Id.*) After she communicated her weight restrictions to him, Mr. Toulouse told Ms. Kaiser that TRACE couldn't accept the 35-pound restriction but might be able to accommodate her if she could get the weight restriction increased. (Dkt. 30-6, Kaiser Dep., p. 69:5-9.) Ms. Kaiser testified that TRACE represented a 40-pound restriction would be acceptable, so she attempted to increase the limit in order to continue working. (*Id.* at pp. 143:22-25, 149:23-25, 150:16-20.)

After taking five days of leave for her ankle injury, Ms. Kaiser returned to work on July 21, 2011. (Dkt. 31-1, p. 2.) Upon her return to work, Mr. Toulouse informed Ms. Kaiser that she was being put on a leave of absence due to her medical restriction. (*Id.*) TRACE derived its policy for pregnant employees and employees with medical restrictions from the Collective Bargaining Agreement ("CBA"). (Dkt. 30-1, p. 3.) Per the terms of the CBA, employees were entitled to a leave of absence for "illness or injury, including pregnancy." (*Id.*) The CBA further provided: "An employee upon becoming pregnant shall be granted a leave of absence." (*Id.*) Mr. Toulouse told Ms. Kaiser that TRACE was "no longer able to keep [you] at work" and presented two options: quit or take a leave of absence. Ms. Kaiser accepted the leave of absence in order to receive short-term disability payments. (Dkt. 31-1, p. 2.)

Ms. Kaiser filed a complaint with the Idaho Human Rights Commission ("IHRC") on August 8, 2011 alleging that TRACE improperly terminated her employment because of her pregnancy. (Dkt. 30-1, pp. 4-5.) Despite this belief, Ms. Kaiser has admitted that she has no knowledge of other TRACE employees who were pregnant or who had restrictions but were permitted to work. (Dkt. 30-6, Kaiser Dep., p. 94:17-22.) The IHRC issued a finding of mixed-motive probable cause on January 28, 2012. (Dkt. 31-9, p. 8.)

After the birth of her baby, Ms. Kaiser notified TRACE on February 6, 2012 of her availability to return to work on March 21, 2012. (Dkt. 30-6, Kaiser Dep., p. 82:11-12.) Under the CBA, Ms. Kaiser was entitled to be "restored to the job previously held, hours

scheduled or to a job comparable with regard to work and rate of pay." (Dkt. 30-7, p. 15.)

However, when she contacted him about returning to work, Mr. Toulouse informed Ms.

Kaiser that her previous position had been filled and instead offered her a night shift.

(Dkt. 30-6, Kaiser Dep., p. 99:17-21.) Ms. Kaiser believed the night position had a

different job description and, potentially, paid less. (*Id*. at pp. 95:14-25, 96:1-3.)

TRACE did not provide any information about the night position to correct Ms. Kaiser's

perception. (*Id*. at p. 98:1-4.) Nor did Mr. Toulouse indicate, as TRACE now contends,

that the night position was only temporary. (Dkt. 31-1, p. 3.) Ms. Kaiser engaged her

union representative, and each of them contacted TRACE multiple times throughout

March regarding Ms. Kaiser's return to work. (*Id.* at pp. 3-4.) The parties never reached

an agreement about a position for Ms. Kaiser.

On March 20, 2012, Ms. Kaiser asked Misty Johnson ("Ms. Johnson"), TRACE's

Personnel Director, about her employment status. (Dkt. 31-5, p. 3.) During that

conversation, Ms. Johnson did not confirm Ms. Kaiser's employment with TRACE, and

also stated that the conflict was Ms. Kaiser's "fault for getting pregnant in the first place."

(*Id.*) After this discussion, Ms. Kaiser considered herself constructively discharged and

declined any further communication from TRACE. (*Id.* at pp. 2-3.) Ms. Kaiser

thereafter hired counsel, who communicated with TRACE on a limited basis in April 2012.

(Dkt. 30-1, p. 6.) As of April 18, 2012, TRACE concluded that Ms. Kaiser had abandoned

her job. (*Id.*) Ms. Kaiser filed suit in state court on August 8, 2012, which TRACE

removed pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446.

# STANDARD OF REVIEW

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party moving bears the initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Where, as here, the movant does not bear the burden of proof at trial, it must show "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The burden then shifts to the nonmoving party to show a genuine dispute of fact. *Anderson*, 477 U.S. at 256-57. The nonmoving party may not rest upon mere allegations or denials in its pleading and must produce evidence sufficient to show that a reasonable jury could return a verdict in its favor. *Id*. at 248. In order to withstand a motion for summary judgment, the nonmoving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989) (citation omitted).

On motion for summary judgment, the Court does not weigh evidence or determine truthfulness of allegations; instead, it determines the existence of genuine issues of material fact. *Cornwell v. Electra Cnt. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006). An issue of material fact is one which may affect the outcome of the case. *Anderson,* 477 U.S. at 248. The Court must view all evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). A statement in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

## ANALYSIS

### Discrimination Claim

Title VII of the Civil Rights Act provides that it is unlawful for an employer to "discharge…or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). The term "because of…sex" includes pregnancy, childbirth or related medical conditions, and pregnant women should be "treated the same for all employment-related purposes…as

other persons not so affected but similar in their ability or inability to work." 42 U.S.C. §2000e(k). Thus, the Court reviews the instant pregnancy discrimination claim as claim for sex discrimination under Title VII.

Title VII discrimination claims are reviewed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a prima facie case of sex discrimination. *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1123 (9th Cir. 2009). If a prima facie case exists, then the burden of production, but not persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *Chuang v. Univ. of Cal. Davis, Bd. Of Trs.*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). If the employer meets its burden, the plaintiff must then raise a triable issue of material fact as to whether the employer's proffered reasons are pretext. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). To satisfy the burden for pretext, the plaintiff must "produce enough evidence to allow a reasonable factfinder to conclude either: (a) that the alleged reason for the discharge was false or (b) that the true reason for [his] discharge was a discriminatory one." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996).

**Prima Facie Case**

To establish a prima facie case of sex discrimination, Plaintiff must show: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside the protected

class were treated more favorably. *Nicholson*, 580 F.3d at 1123. Discrimination

plaintiffs need to produce "very little evidence" to oppose to a summary judgment motion.

*Chuang*, 225 F.3d at 1124. The elements and contours of a prima facie case will differ

according to the facts at hand. *Hawn v. Executive Jet Management, Inc.*, 615 F. 3d 1151,

1156 (9th Cir. 2010). A plaintiff can use direct or circumstantial evidence to establish a

prima facie case for discrimination. *Id.*

TRACE concedes that Ms. Kaiser was a member of a protected class as a pregnant

woman, but argues that she failed to establish a prima facie case as to the remaining

elements.

### 1.     *Qualified for the position/satisfactory performance*

The parties cite different standards for the second element of a prima facie sex

discrimination case. TRACE contends that the second element is whether or not Ms.

Kaiser was qualified for the position. Ms. Kaiser, on the other hand, argues that the

standard is whether or not she performed satisfactorily in her job. Regardless of the exact

language for the element, Ms. Kaiser must produce evidence to show that she was capable

of fulfilling the duties required of her position.

Here, Ms. Kaiser testified that she received only one or two warnings from the

company for improper stocking during the five years she worked for TRACE. (Dkt. 30-6,

Kaiser Dep., p. 25:14-17.) TRACE does not dispute this evidence of satisfactory

performance. However, satisfactory performance does not alone govern whether or not

Ms. Kaiser was capable of fulfilling the duties of the position. Lifting heavy pallets was integral for both a day stocker and a warehouse employee. In fact, Ms. Kaiser acknowledged that the job description for each of the positions she held required the ability to lift up to 75 pounds. (*Id.*, pp. 62:17-63:13.) When her doctor imposed a lifting restriction, Ms. Kaiser no longer met the job description. (Dkt. 31-7, p. 1.)

However, the record reveals conflicting evidence regarding the precise weight limitation TRACE actually deemed acceptable. Mr. Toulouse told Ms. Kaiser that TRACE could not "work with" the 35-pound weight restriction but "would probably be willing to work with" her if she could get the weight limitation "bumped up." (Dkt. 30-6, Kaiser Dep., p. 69:5-9.) Another TRACE representative told Ms. Kaiser a 40-pound weight restriction would be acceptable, so she attempted to have her doctor raise her weight restriction in order to continue working. (*Id.*, pp. 143:22-25, 149:23-25, 150:16-20.) A September 6, 2011 letter from Ms. Kaiser's doctor stated that he released her "back to her full duties with a limitation of lifting no greater than 40 pounds," noting that Ms. Kaiser told him it was "the maximum she is supposed to lift at work regardless." (Dkt. 31-7, p. 6.)

The record permits the reasonable inference that a 40-pound weight restriction was acceptable despite the job description stating otherwise. The discussion of TRACE "working with" Ms. Kaiser and of a 40-pound weight limit suggests that the company was willing to employ an alternate requirement. Viewing the evidence in a light most favorable to the plaintiff, it is reasonable to infer that Ms. Kaiser believed, and TRACE

expressed, that the requirement to continue working was 40 pounds, not 75 pounds. Conflicting evidence about TRACE's expectations creates a genuine issue of material fact about whether or not Ms. Kaiser was qualified for the position such that she could perform the duties of the job.

### 2. *Adverse employment action*

An adverse employment action is one that materially affect[s] the compensation, terms, conditions or privileges of employment." *Chuang*, 225 F.3d at 1125. Ms. Kaiser contends that TRACE forced her to take a leave of absence against her will. (Dkt. 30-2, p. 8.) In support of this position, Ms. Kaiser asserts that Mr. Toulouse gave her two choices: quit her job or go on leave. (Dkt. 30-6, Kaiser Dep., pp. 70:25-71:2.) Without explanation, Mr. Toulouse simply handed Ms. Kaiser completed paperwork requiring her to take a leave of absence due to her pregnancy. (*Id*. at p. 71:3-9.) Ms. Kaiser's only option for income during a leave of absence was short-term disability pay. On short-term disability pay, Ms. Kaiser received two-thirds of her regular pay. Ms. Kaiser faced losing all of her income or losing a third of her income, with either option resulting in a material change to her compensation. Thus, Ms. Kaiser made a prima facie showing of an adverse employment action.

### 3. *Similarly situated individuals outside the protected class*

To establish the final element under *McDonnell Douglas*, Ms. Kaiser must produce evidence that similarly situated male or other non-pregnant employees were treated more

favorably.   Employees are similarly situated when they have similar jobs and display similar conduct.   *Nicholson*, 580 F.3d at 1125.   They need not be identical but must be similar in all material respects.   *Id.*   In this instance, a non-pregnant employee with a medical restriction would constitute a similarly-situated employee.   Ms. Kaiser suggests she has "identified instances where other employees with medical restrictions were treated differently."   (Dkt. 31, p. 8.)   In her deposition, Ms. Kaiser testified that she heard about night shift employees who had asthma or breathing conditions but were allowed to continue working for TRACE without having to take a leave of absence.   (Dkt. 30-6, Kaiser Dep., p. 94:8-16.)   However, Ms. Kaiser contradicted herself when she admitted that she had no knowledge of whether those night employees had medical restrictions. (*Id*. at p. 94:17-22.)   Ms. Kaiser further admitted that she was not aware of any TRACE employee who was injured, ill, or pregnant, who had a medical restriction, and who TRACE permitted to work.   (*Id*. at p. 141:13-18.)

Ms. Kaiser contends that whether similarly situated employees were treated more favorably by TRACE is a question of fact and relies on *Beck v. United Food and Commercial Workers Union*.   (Dkt. 30-2, p. 8.)   However, in *Beck* and the cases cited therein, the question of fact revolved around comparative evidence.   *Beck*, 506 F.3d 874, 885 (9th Cir. 2007).   That is, in such cases the plaintiff offered evidence regarding other employees to show that they were similarly situated "in all material respects."   Whether or not the comparative evidence showed that the other employees were, in fact, similarly

situated was a question of fact.   Here, Ms. Kaiser has not proffered any comparative or statistical evidence to show that other employees were similarly situated.

In the absence of comparative or statistical evidence regarding similarly situated employees, the Court must consider how TRACE treated other employees who also had restrictions.   Ms. Kaiser fails to offer any evidence that employees she thought might have had asthma were similar in all material respects.   Ms. Kaiser also failed to identify the individuals who had asthma.   And she offers no evidence regarding other employees with medical restrictions or of how TRACE treated such employees.   Thus, Ms. Kaiser has not proffered any evidence, direct or circumstantial, to show that TRACE treated similarly situated employees more favorably.   A plaintiff must produce evidence and cannot simply rely on factual assertions in order to defeat a summary judgment motion.   *See, e.g.*, *Kennedy v. Allied Mutual Ins. Co.*, 952 F. 2d 262, 265 (9th Cir. 1991) (party opposing summary judgment "must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists.").   In the absence of any evidence that similarly situated employees were treated more favorably by TRACE, Ms. Kaiser fails to establish the fourth element of a prima facie case of sex discrimination.    Summary judgment is accordingly proper with respect to Ms. Kaiser's discrimination claim.

**Retaliation Claim**

Title VII includes a separate anti-retaliation provision that prohibits an employer from discriminating "against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a

charge…under this subchapter." 42 U.S.C. §2000e-3(a). Title VII retaliation claims also follow the *McDonnell Douglas* burden-shifting framework. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). To establish a prima facie case of retaliation, Plaintiff must demonstrate: (1) she engaged in a protected activity; (2) she was subsequently subject to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).

### Prima Facie Case

#### *Protected activity*

An employee's submission of or support for a complaint that alleges employment discrimination is a type of protected activity covered by Title VII, §2000e-3(a). *University of Texas Southwestern Medical Ctr. v. Nassar*, ---- U.S. ----, 133 S.Ct. 2517, 2525 (2013). TRACE does not dispute that Ms. Kaiser's IHRC complaint constitutes a protected activity.

#### *Adverse employment action*

The Ninth Circuit takes an expansive view of the type of action that constitutes an adverse employment action. *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 850 (9th Cir. 2004). An adverse action is one that is "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). The anti-retaliation provision seeks to prevent harm to individuals based on their conduct.

*Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). That harm is not limited to so-called "ultimate employment decisions," but is one a reasonable employee would find materially adverse and which might dissuade a reasonable worker from making or supporting a charge of discrimination. *Id.* at 67-68. The significance of any given act of retaliation will often depend on the circumstances. *Id.* at 69.

Here, TRACE placed Ms. Kaiser on a leave of absence because of her pregnancy. According to the terms of the CBA, "upon notice of the employee's availability for work prior to P.M. Wednesday of any week, the employee shall be restored to work to begin not later than Monday following the giving of such notice." (Dkt. 30-7, p. 15.) On February 6, 2012, Ms. Kaiser gave notice of her availability to return to work March 21, 2012. (Dkt. 30-6, Kaiser Dep., p. 76:7-19.) Ms. Kaiser spoke with TRACE, as did her union representative, throughout March regarding her position and date of return. (Dkt. 31-5, pp. 1-2.) It appears that, under the terms of the CBA, TRACE should have scheduled Ms. Kaiser for work as early as March 21st but no later than March 26th. March 26th was the Monday following Ms. Kaiser's release date and following the date of her final conversation with TRACE regarding her return. Viewed in a light most favorable to Ms. Kaiser, the record presents a question of fact as to when Ms. Kaiser was entitled to return to work and, thus, of whether or not TRACE violated the CBA with respect to Ms. Kaiser.

More importantly, the CBA also required TRACE to reinstate Ms. Kaiser to "the job previously held, hours scheduled or to a job comparable with regard to work and rate of pay" upon her return to work. (Dkt. 30-7, p. 15.) Ms. Kaiser testified that Mr. Toulouse

informed her that her position had been permanently filled and offered her a night position instead. (Dkt. 31-5, p. 2.) While TRACE claims to have informed her that the night position was temporary, Ms. Kaiser testified that no such representation was made. (*Id.*) Ms. Kaiser believed the night position was different than the day position both in hours and, potentially, in pay. (Dkt. 30-6, Kaiser Dep., pp. 95:14-25, 96:1-3.) Though Ms. Kaiser lacked personal knowledge of the position's pay, her union representative cautioned her that the situation "didn't seem right." (Dkt. 31-5, p. 2.) Ms. Kaiser and her union representative both spoke with TRACE on multiple occasions, and TRACE did not proffer salient details of the night job, such as title, hours, or pay. (*Id.* at p. 98:1-4.) Without providing evidence in support, TRACE claims that it offered Ms. Kaiser a comparable, temporary position per the terms of her CBA. (Dkt. 30-2, p. 10.) The night position's comparability based on pay and hours will determine whether or not TRACE violated the terms of Ms. Kaiser's CBA. Ms. Kaiser has identified sufficient facts to demonstrate a genuine dispute as to whether TRACE fulfilled the terms of Ms. Kaiser's employment.

For the retaliation claim, the details of the position TRACE offered Ms. Kaiser upon her reinstatement are also necessary to determine whether or not a reasonable employee would have found the schedule change materially adverse. Though a reassignment of job duties is not automatically actionable, it can be considered retaliatory. *Burlington N. and Santa Fe Ry. Co.*, 548 U.S. at 71. A schedule change, like the one here from day to night hours, may "make little difference to many workers, but may matter enormously to a young mother." *Id.* at 69. Indeed, Ms. Kaiser testified that the night schedule would have

"caused some issues" because of her newborn.   (Dkt. 30-6, Kaiser Dep., p. 97:19-23.)   In

sum, whether or not the night position was: (1) comparable to Ms. Kaiser's previous day

position; (2) materially adverse; or (3) a temporary assignment, are genuine disputes of

material fact for a jury.

### Causal link between protected activity and adverse employment action

To show causation, a plaintiff must "establish that his or her protected activity was a

but-for cause of the alleged adverse action by the employer."   *University of Texas*

*Southwestern Medical Ctr.*, 133 S.Ct. at 2534.   Under this heightened standard, the

plaintiff must prove that "the unlawful retaliation would not have occurred in the absence

of the alleged wrongful action or actions of the employer." [1]   *Id.* at 2533.

Causation sufficient to establish a prima facie case may be inferred from

circumstantial evidence, such as the "employer's knowledge that the plaintiff engaged in

protected activities and the proximity in time between the protected action and the

allegedly retaliatory employment decision."   *Yartzoff v. Thomas*, 809 F.2d 1371, 1376

(9th Cir. 1987).     Here, Ms. Kaiser filed a complaint with the IHRC on August 8, 2011

alleging that TRACE discriminated against her because of her pregnancy.   (Dkt. 30-1, p.

---

[1] Prior to *Nassar*, the Ninth Circuit invoked the broader motivating-factor test Ms. Kaiser relies upon.   The Ninth Circuit held that temporal proximity could be used to support an inference of retaliatory intent sufficient to survive summary judgment.   *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008).   The Ninth Circuit has not yet applied the but-for causation standard in a retaliation case but has noted that it is the proper standard.   *See Avila v. Los Angeles Police Dept.*, 758 F.3d 1096, 1101 n.3 (9th Cir. 2014) (noting that the but-for causation standard is now required but declining to address a causation question not before the court); *Rose v. Plastikon Indus., Inc.*,   537 Fed.Appx. 750, 751 n.1 (9th Cir. 2013) (noting that "the proper causation test for Title VII retaliation claims is "but-for causation" rather than motivating-factor causation).

4.)   The IHRC issued its determination of mixed-motive probable cause in Ms. Kaiser's case on January 28, 2012.   (Dkt. 31-9, p. 8.)   Shortly thereafter, on February 6, 2012, Ms. Kaiser faxed a notice of availability to return to work on March 21, 2012.   (Dkt. 30-6, Kaiser Dep., p. 82:11-12.)   Despite having been provided ample notice, TRACE stated that Ms. Kaiser could not be reinstated to her former position because her supervisor "did not expect [Kim] to be gone that long" and had permanently filled her position.   (*Id*. at p. 99:17-21.)   Further, on March 20, 2012 Ms. Johnson represented TRACE and could not or would not confirm Ms. Kaiser's employment status.   (Dkt. 31-5, p. 3.)   The same day, Ms. Johnson allegedly informed Ms. Kaiser that the whole conflict was her "fault for getting pregnant in the first place."   (*Id.*)

While Ms. Kaiser filed the IHRC complaint approximately six months before the reinstatement conflict, only six weeks elapsed between the IHRC determination and the dispute over Ms. Kaiser's reinstatement.   This circumstantial evidence supports an inference of retaliatory motive.   Similarly, Ms. Johnson's inability or refusal to classify Ms. Kaiser only days before she was supposed to return to work supports an inference of retaliation.

Ms. Kaiser also presented direct evidence of TRACE's retaliatory intent.   Ms. Johnson's statement links TRACE's actions toward Ms. Kaiser's reinstatement to her pregnancy and, thus, to Ms. Kaiser's protected activity before the IHRC.   Taken together, the evidence could lead a reasonable jury to conclude that TRACE would not have taken

the same action toward Ms. Kaiser absent her IHRC complaint alleging wrongful action because of her pregnancy.

### Legitimate, Non-discriminatory Reason

Once a plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action. *Chuang*, 225 F.3d at 1123-24. TRACE argues its conduct was legitimate and non-retaliatory because all of its actions were "clearly spelled out in the CBA" and were taken in an effort to comply with the CBA. [2] (Dkt. 30-2, p. 13.)

### Pretext

If an employer offers a legitimate, non-retaliatory reason for its action, a plaintiff must then raise a triable issue of material fact as to whether the employer's proffered reasons are pretext. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). Using indirect evidence, a plaintiff can prove pretext by showing that the employer's proffered explanation is "unworthy of credence." *Chuang*, 225 F.3d at 1127. A plaintiff can rely on the same evidence used to establish a prima facie case of retaliation to show pretext if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons. *Id.* As previously discussed, the material details of the night position, and whether or not it was comparable, temporary, and adverse, are matters of genuine dispute. Because TRACE relies on its assertion that the night position was comparable

---

[2] To support its position, TRACE again contends that the night position was comparable and highlights that Ms. Kaiser failed to ascertain comparative information. (Dkt. 30-2, p. 12.) TRACE, however, has not offered any evidence to establish the night position was, in fact, comparable.

and temporary, the dispute over comparability also underlies the truth of TRACE's proffered reason for its actions.

A retaliation plaintiff is required to produce "very little" direct evidence of the employer's discriminatory intent to move past summary judgment. *Id.* at 1128. In her capacity as Personnel Director, Ms. Johnson had hiring and firing authority over employees, including Ms. Kaiser. Ms. Johnson told Ms. Kaiser that the conflict was Ms. Kaiser's fault "for getting pregnant in the first place." (Dkt. 31-5, p. 3.) Because of Ms. Johnson's role in the company, her comments demonstrate that TRACE's motives were likely discriminatory for the purpose of proving pretext. Thus, Ms. Kaiser has provided sufficient evidence to show that TRACE's proffered reasons were pretext. Ms. Kaiser's retaliation claim survives summary judgment.

**Damages**

In Title VII cases, an award of back pay is appropriate to advance "Congress' intent to make plaintiffs whole for injuries suffered through past discrimination." *Loeffler v. Frank,* 486 U.S. 549, 558 (1988). Courts also award front pay when the antagonism between the employer and employee is so great that reinstatement is not appropriate. *Caudle v. Bristow Optical, Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000). However, the Supreme Court has held that absent special circumstances, an employee's rejection of an unconditional job offer ends the accrual of potential back pay liability. *Ford Motor Co. v. Equal Employment Opportunity Comm'n*, 458 U.S. 219, 241 (1982).

TRACE claims that Ms. Kaiser stated to the IHRC in August 2011 that she did not plan on returning to work with TRACE and "wanted to get as much as she could from the company." (Dkt. 30-2, p. 14.) TRACE argues this statement is evidence that Ms. Kaiser "undisputedly dispelled any reasonable expectation of continuing employment with [her employer]." (*Id*.) TRACE contends that because Ms. Kaiser voluntarily withdrew from the workforce, she failed to mitigate damages, and that her damages should accordingly be limited as a matter of law. However, the reasonableness of mitigation efforts is a question of fact. *Ortiz v. Bank of America Nat'l Trust and Savings Assn.*, 852 F.2d 383, 387 (9th Cir. 1987). Moreover, there is abundant evidence that, despite any earlier statements, Ms. Kaiser attempted to be reinstated to her former position and did not withdraw from the workforce. (Dkt. 31-5.) The record also suggests that TRACE's employment offer was not one of unconditional reinstatement because Ms. Kaiser was offered a night position instead of her prior day position. For the foregoing reasons, the Court finds that questions of material fact preclude limiting Ms. Kaiser's damages as a matter of law.

### Conclusion

Ms. Kaiser has established a prima face case of retaliation and has demonstrated TRACE's proffered reasons for its action were pretext. Thus, summary judgment is not proper, and Ms. Kaiser's retaliation claim survives.

## ORDER

Based on the foregoing, and being fully advised in the premises, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 30) is **GRANTED in part and DENIED in part.**

Summary Judgment is **GRANTED** with respect to Ms. Kaiser's discrimination claim.   Summary Judgment is **DENIED** with respect to Ms. Kaiser's retaliation claim**.**   A jury trial is scheduled to begin on May 5, 2015 at 9:30 a.m.   (Dkt. 29.)

DATED: December 12, 2014

Edward J. Lodge
United States District Judge